UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

N⁰ 09-CV-2218 (JFB) (ARL)

———————————

Frank MacKay, et al.,

Plaintiffs,

versus

Kay Allison Crews, et al.,

Defendants.

———————————

**MEMORANDUM AND ORDER**
December 16, 2009

———————————

Joseph F. Bianco, District Judge:

This case stems from a long-running dispute between two groups of individuals, each of which claims to represent the leadership of the Reform Party of the United States of America (RPUSA). Plaintiffs, members of one group, allege that defendants, some of whom are members of another group, have unlawfully used the RPUSA name and logos. Defendants moved to dismiss, arguing that the doctrine of res judicata bars plaintiffs' claims. After reviewing the parties' papers on the motion to dismiss and giving the parties the requisite notice, the Court exercised its discretion to convert the motion into a motion for summary judgment. In addition to the pending motion for summary judgment, defendants also have moved to vacate an injunction issued in state court before this case was removed to federal court. For the reasons that follow, the Court grants both of defendants' motions in their entirety.

I. Background

The following facts are taken from the amended complaint and from the declarations and exhibits the parties have submitted in connection with the pending motions. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Thus, with regard to defendants' motion for summary judgment, the Court shall construe the facts in favor of plaintiffs.

### A. The Parties

The plaintiffs in this case are: the RPUSA; Frank MacKay, President of the RPUSA; the Independence Party of New York ("IPNY"); Michael Zumbluskas, a member of the IPNY and chairman of the RPUSA Legal Committee; and John Blare, the Secretary of the RPUSA. The plaintiffs claim to be the rightful leadership of the Reform Party. For the purposes of this Memorandum and Order, the Court will refer to plaintiffs as the "Blare Faction."

Defendants Beverly Kennedy, Charles Foster, David Collison, Janice Miller, Ruben Hernandez, Jr., and Matthew Johnson also claim to represent the rightful leadership of the Reform Party. For the purposes of this Memorandum and Order, the Court will refer to these defendants as the "Collison Faction." The remaining defendant, Kay Allison Crews, was appointed as a receiver by a Texas court in 2008 to oversee a Reform Party convention.

### B. The Competing 2005 Conventions

Since at least 2005, the Blare Faction has been vying with the Collison Faction for control of the Reform Party.

In June 2005, members of the Collison Faction and others held a purported Reform Party national convention in Tampa, Florida. (Am. Compl. ¶¶ 45-46.) The attendees at the convention elected a slate of officers that, it was claimed, were the Reform Party's rightful leadership. (*See id.* ¶ 47.)[1]

---

[1] Defendants Beverly Kennedy, Charles Foster, Ruben Hernandez, Jr., and David Collison were among the officers elected at the Tampa convention. (*See* Def. Mem. of Law at 3.)

Other individuals, including plaintiff Blare, claimed the Tampa convention was invalid. (*Id.* ¶ 48.) Five months after the Tampa convention, these members held a convention in Yuma, Arizona at which they elected a rival slate of officers, including plaintiff Blare as the Secretary of the RPUSA. (*See id.* ¶¶ 51-52; Opp. Ex. 3 at 4 n.3.)

### C. The Florida Judgment

The officers elected at the Tampa convention then brought a lawsuit in the U.S. District Court for the Northern District of Florida, claiming that the officers elected at the Yuma convention and others were infringing on the RPUSA's service marks. (*Id.* ¶ 56-57.) The district court determined that the validity of the elections at the Tampa convention was a threshold issue, reasoning that if the officers elected there were not validly elected, then they could not assert the RPUSA's service mark rights. (*See id.* ¶¶ 58-60; MTD Exs. 2-3; Opp. Ex. 3 at 4-5.) The district court then severed this issue for a jury trial. (Am. Compl. ¶ 60; MTD Exs. 2-3; Opp. Ex. 3 at 4.) The jury found that the election of the officers at the Tampa convention was invalid. (Am. Compl. ¶ 60; MTD Ex. 2-3.) On September 1, 2007, the district court entered judgment for the defendants and dismissed with prejudice claims by RPUSA officers "purportedly (but invalidly) elected at the Tampa convention . . . . " ( MTD Ex. 3 at 2; *see also* Am. Compl. ¶¶ 67-69.).

### D. The Texas Judgment

Less than two weeks before the Florida court entered judgment, the Texas Reform Party, the Reform Party of Florida, and the Reform Party of Michigan filed an action against the RPUSA, John Blare, and others in

the 193rd District Court, Dallas County, Texas. These plaintiffs later filed an amended petition challenging the validity of the Yuma convention and alleging that Blare had breached his fiduciary duties to the RPUSA. (*See* MTD Ex. 5.)[2] On February 12, 2008, the Texas state court entered a temporary restraining order, restraining John Blare, Rodney Martin,[3] "their agents and those working in concert with them . . . from engaging in any binding votes at any RPUSA meetings . . . ." (*See* MTD Ex. 6 at 2.) Following a February 22, 2008 hearing, the Texas court issued two orders on April 11, 2008. The first order enjoined Blare and the other defendants "from conducting business inconsistent with the . . . RPUSA Constitution." (*See* MTD Ex. 9 at 2.) The second order appointed Kay Allison Crews, a defendant in the instant case, as a temporary receiver to organize a national RPUSA convention to determine the party leadership. (*See* MTD Ex. 10.)

Pursuant to the Texas court's order, defendant Crews organized a convention that began on July 18, 2008 in Dallas. (*See* MTD Ex. 11.) At the convention, David Collison was elected chairman of the RPUSA, Rodney Martin was elected vice-chairman, Janelle Skinner-Weill was elected secretary, and Beverly Kennedy was elected treasurer. (*See id.* at 3.)

---

[2] The amended complaint in the instant case only mentions the Texas litigation in the prayer for relief, not in the recitation of facts. (*See* Am. Compl., Prayer for Relief ¶¶ 6, 10(l).)

[3] In the instant case, Mr. Martin was named as a defendant in the amended complaint, having had a disagreement with the Blare faction around the time of the Texas litigation. He has not, however, been served with process or appeared in this case.

On August 26, 2008, the Texas case was called for trial. (*See* MTD Ex. 12.) Defendants, including John Blare and the RPUSA, did not appear. The court entered a default judgment for plaintiffs. It declared that the 2005 Yuma convention was invalid and permanently enjoined defendants from holding themselves out as representatives of the RPUSA and from maintaining any RPUSA website or the RPUSA telephone number. The court also ordered defendants to surrender enumerated RPUSA property to David Collison and imposed a constructive trust on the property. (*See id.*) No appeal was taken.

E. The Instant Case

The instant lawsuit was filed during the pendency of the Texas litigation. A summary of the procedural history of the instant case is set forth below.

1. State Court Proceedings

On May 28, 2008, plaintiffs applied to Supreme Court, Suffolk County, for a temporary restraining order preventing defendants from holding themselves out as representatives of the RPUSA. (*See* Am Compl. ¶ 83; Opp. Ex. 4). The application consisted of an unsigned order, an affidavit by plaintiff Frank MacKay, and 22 exhibits. (*See* MTD Ex. 7.) The exhibits — mainly minutes of party meetings — occasionally allude to the Texas litigation, but MacKay's affidavit makes no explicit mention of it. (*See id.*) The Suffolk County court granted the TRO. (*See* Opp. Ex. 4.)

Then, on July 17, 2008, one day before the Dallas convention, the Suffolk County court issued a preliminary injunction prohibiting

defendants from holding themselves out as representatives of the RPUSA. (*See* Opp. at Ex. 5.)

More than six months later, on May 7, 2009, plaintiffs filed a complaint in the lawsuit in Supreme Court, Suffolk County. The complaint asserted claims under 15 U.S.C. § 1125(a) and New York General Business Law § 360(l), as well as common law claims for trademark infringement and unfair competition. (*See* Docket # 1.)

2. Post-Removal Proceedings

Defendants filed a notice of removal on May 27, 2009.[4] Plaintiffs subsequently filed an amended complaint on June 30, 2009. The amended complaint added 17 additional named defendants and asserted additional claims under 15 U.S.C. § 1125 for dilution, cyberpiracy, and infringement of an unregistered mark, as well as a claim for common law service mark infringement. The amended complaint also asks the Court to grant civil contempt citations against defendants for violating the Suffolk County injunction.

a. The Pending Motions

On August 7, 2009, defendant Beverly Kennedy answered the amended complaint and also asserted the following counterclaims: (1) under 25 U.S.C. §1125, for trademark infringement, dilution, and cyberpiracy; (2) under 2 U.S.C. § 441(h), for fraudulent misrepresentation of a political party; and (3) under common law, for conversion and abuse of process. Defendant Kennedy amended her counterclaims on August 28, 2009.

On October 1, 2009, all defendants who had been served with process with the exception of defendant Kennedy—*i.e.*, the remaining Collison Faction defendants and defendant Crews—moved to dismiss the amended complaint pursuant to Rule 12(b)(1) and 12(b)(6). The same day, defendant Kennedy moved to vacate the injunction that Supreme Court, Suffolk County, issued before defendants removed the case to this Court. On October 13, 2009, the other defendants joined in defendant Kennedy's motion to vacate. On December 3, 2009, defendant Kennedy joined in the other defendants' motion to dismiss the amended complaint. On October 30, 2009, plaintiffs filed their opposition to the motion to dismiss. On November 13, 2009, defendants submitted their reply on the motion to dismiss. On November 16, 2009, plaintiffs filed their opposition to the motion to vacate. On December 1, 2009, defendant Kennedy filed a reply in connection with the motion to vacate. On December 4, 2009, the Court held oral argument. Various parties made other submissions during the briefing of the motions.[5]

---

[4] 28 U.S.C. § 1446(b) requires the defendant to file a notice of removal within 30 days of receiving the initial pleading giving notice that the case is removable. *See* 28 U.S.C. § 1446(b). Even assuming this 30-day timeline was triggered upon plaintiffs' 2008 requests for injunctive relief — and not upon the May 2009 complaint — plaintiffs have not objected to removal. Failing to file a motion to remand within 30 days of removal waives any objection to removal other than subject matter jurisdiction. *See Shapiro v. Logistec, USA*, 412 F.3d 307, 315 (2d Cir. 2005) (failure to file timely motion to remand waived objection to removal) (citing 28 U.S.C. § 1447(c)).

[5] For example, in conjunction with a series of letters in November 2009 and a Court telephone

### b. Conversion of the Motion to Dismiss into a Motion for Summary Judgment

The parties' submissions on the motion to dismiss attached numerous exhibits including meeting minutes and web page printouts. Because these materials were outside of the pleadings, the Court had discretion to either exclude these materials or convert the motion to dismiss into a motion for summary judgment. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2003); *see also Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) ("Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment; 'this discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.'" (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 1366 (3d ed. 2004))). If the Court decides to convert the motion to dismiss into a motion for summary judgment, the non-moving party must be given a "reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985).

At oral argument on December 4, 2009, the Court asked the parties if they had any objection to converting the motion to dismiss into a motion for summary judgment. None of the parties objected and, having provided notice to the parties of its intent to convert the motion to summary judgment to consider documents that were submitted beyond the pleadings, the Court provided the parties with an opportunity to supplement their submissions with additional documentation. The parties made these additional submissions to the Court following oral argument.[6] The Court has considered all of the submissions of the parties.[7]

---

conference on November 23, 2009, defendants advised the Court that plaintiffs were planning on having an RPUSA convention in Monroe, Connecticut on December 19-20, 2009. The Court advised the parties that it intended to issue a ruling on the pending motions prior to the date of the scheduled convention.

[6] Pursuant to Local Rule 56.2, the Court also provided plaintiff Blare with the requisite notice for pro se litigants opposing summary judgment motions. *See Irby v. New York City Transit Authority*, 262 F.3d 412, 414 (2d Cir. 2001) ("And we remind the district courts of this circuit, as well as summary judgment movants, of the necessity that *pro se* litigants have actual notice, provided in an accessible manner, of the consequences of the *pro se* litigant's failure to comply with the requirements of Rule 56."). In the exercise of its discretion, the Court did not require submission of 56.1 statements because the purported undisputed and disputed factual issues were apparent from the submissions of the parties.

[7] On December 9, 2009, the Court received a "Motion to Intervene as a Plaintiff, or in the Alternative Intervene as Amicus Curiae, 'Friend of the Court,'" from Shawn O'Hara. Mr. O'Hara is a former Reform Party chairman and was a defendant in the Florida litigation. Mr. O'Hara seeks to intervene because he believes that he has nearly unprecedented knowledge regarding the Florida litigation and the Yuma Convention. However, Mr. O'Hara claims no current interest in the RPUSA or its marks and, thus, has no right

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. ANALYSIS

Plaintiffs in this case bring federal claims for trademark infringement and false designation of origin under 15 U.S.C. § 1125(a), for dilution under 15 U.S.C. § 1125(c), and for cyberpiracy under 15 U.S.C. § 1125(d). They also bring claims under the New York General Business Law for trademark dilution and under common law for service mark and trademark infringement and

---

to intervene in this trademark case. *Cf.* Fed. R. Civ. P. 24 (stating that intervention as of right requires, *inter alia*, "an interest relating to the property or transaction that is the subject of the action"). Moreover, given the thorough submissions by the parties, the Court has sufficient knowledge about the Florida litigation and Yuma Convention for purposes of deciding this motion and does not need an amicus brief on those issues.

unfair competition.[8]

In order to bring any of these claims, plaintiffs must have a commercial or ownership interest in the RPUSA marks. Specifically, both § 1125(c) and § 1125(d) require that the plaintiff be "the owner of a famous mark."[9] Similarly, to state a claim under § 1125(a), a plaintiff must show a "reasonable commercial interest" to be protected. *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116, 130 (2d Cir. 2000) (citing *Ortho Pharm. v. Cosprophar*, 32 F.3d 690, 694 (2d Cir. 1994) and *Berni v. Int'l Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 648 (2d Cir. 1988)). Likewise, standing under New York General Business Law § 360-l requires that the plaintiff be the registrant or assignee of a mark. *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 471 (E.D.N.Y. 2008) ("'Only the federal registrant or legal assignee has standing to sue under . . . Section 360-l of the New York General Business Law.'" (quoting *Prince of Peace Enter., Inc. v. Top Quality Food Market, LLC*, No. 07-CV-0349, 2007 WL 704171, at *3 (S.D.N.Y. Mar. 7, 2007))). Also, common law infringement claims require that a plaintiff show a "concrete interest" in the mark at issue. *See, e.g.*, *Krasnyi Oktyabr, Inc. v. Trilini Imports*, No. CV-05-5359, 2007 WL 1017620, at *9 (E.D.N.Y. Mar. 30, 2007). Finally, to state a claim for common law unfair competition, a plaintiff must demonstrate a "colorable property or pecuniary interest." *Berni*, 838 F.2d at 648.

Given the claims asserted here, a predicate to the viability of each of plaintiffs' federal and state claims in the instant case is proving ownership of the RPUSA name and logo. As set forth below, because of a prior Texas state court judgment, the doctrine of res judicata precludes plaintiffs from demonstrating the requisite ownership of the RPUSA name and logo.[10] In particular, plaintiffs allege

---

[8] Additionally, plaintiffs seek contempt sanctions against defendants for violating the injunction entered by Supreme Court, Suffolk County. However, this claim is procedurally defective because any such application would have to be made in a separate motion to the Court, rather than simply being asserted in the pleadings. In any event, given the failure of plaintiffs to expressly advise the New York state court of the prior Texas injunction on their initial application for relief, this Court would deny any motion for sanctions under the doctrine of unclean hands. *See Pennecom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488 (2d Cir. 2004) ("'The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abettor of iniquity.'" (quoting *Bein v. Heath*, 47 U.S. 228, 247 (1848))).

[9] *See* 25 U.S.C. §§ 1125(c)-(d); *see also Savin Corp. v. Savin Group.*, 391 F.3d 439, 448 (2d Cir. 2004) (stating that § 1125(c) "'permits the owner of a qualified, famous mark to enjoin junior uses . . . .'" (quoting *TCPIP Holding Co. v. Haar Communic'ns Inc.*, 244 F.3d 88, 95 (2d Cir.2001))); *ICEE Distribs., Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 599 (5th Cir. 2003) (holding that because plaintiff was "not the owner of the marks, but merely an exclusive licensee, it has no standing to sue under the Dilution Act . . . ."); *Cintas Corp. v. UNITE Here*, 601 F. Supp. 2d 571, 580 (S.D.N.Y. 2009) (stating that plaintiff must be the "owner of a famous mark" to state a claim under § 1125(d)).

[10] Because the issue regarding the federal claims and state claims is identical as it relates to the doctrine of res judicata in this case, and because this lawsuit will continue as it relates to defendant Kennedy's counterclaims, the Court, in its

7

ownership of the mark based upon the convention held in 2005 in Yuma, Arizona, at which a slate of officers was elected, including plaintiff John Blare. Moreover, plaintiffs assert that the validity of the Yuma convention results was resolved in their favor in a Florida federal court case, in which a jury found that the election of members of the Collison Faction at the Tampa convention was invalid. However, a review of the uncontroverted facts in the record demonstrates that the Florida judgment was limited to the narrow issue of the invalidity of the Tampa convention. Thus, the judgment did not address the validity of the Yuma convention and did not address who the proper RPUSA representatives were. In fact, the Florida Court's "Order for Entry of Judgment" states that the dismissal of claims by the plaintiffs in that case (who were part of the Collison Faction) was "without prejudice with respect to claims, if any, that may be asserted by the Reform Party of the United States on authority not derived directly or indirectly through the national convention in Tampa, Florida, in June 2005."

Subsequent to the Florida judgment, the issue of who were the authorized representatives of RPUSA was fully litigated in a Texas state court action brought by certain state Reform Party entities controlled by the Collison Faction, including defendant Kennedy in this case, against the RPUSA and John Blare. Specifically, the Texas court appointed a temporary receiver to organize a national convention in Dallas and, at that convention, those individuals who were part of the Collison Faction, including Kennedy, were elected as officers. The trial in the Texas case was then held and a default judgment entered against Blare and the RPUSA, which stated that the 2005 Yuma convention was invalid and also granted the following relief: (1) it permanently enjoined the defendants, including John Blare, from holding themselves out as RPUSA representatives; (2) it required surrender by the defendants of enumerated RPUSA property to David Collison; and (3) it imposed a constructive trust. No appeal was taken by the defendants in the Texas action. The undisputed record demonstrates that all of the elements of the doctrine of res judicata are satisfied in connection with the Texas lawsuit and that res judicata bars plaintiffs from claiming in this action that they are representatives of RPUSA and own the party's marks and logos. In particular, (1) there was a prior final judgment on the merits (which Texas law has made clear can be satisfied by a default judgment); (2) all of the parties in the instant lawsuit were either involved in the Texas lawsuit or were in privity with the Texas parties; and (3) all of the claims in this lawsuit were raised, or should have been raised, in the Texas lawsuit. Finally, although plaintiff Blare argues that he did not have a full and fair opportunity to defend the Texas action, it is conceded that he knew about the lawsuit in Texas, participated in various hearings in that lawsuit, chose not to attend the trial in person, and did not appeal the default judgment because of an alleged lack of funds. Thus, the undisputed record indicates that Blare had a full and fair opportunity to litigate these claims and chose to stop litigating at some point during that

---

discretion, exercises supplemental jurisdiction over plaintiff's state claims because judicial economy warrants consideration of those claims under the circumstances. *See Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992); *accord Jean-Louis v. N. Shore Univ. Hosp. at Plainview*, No. 06 Civ. 3023 (JFB) (ARL), 2007 WL 4409937, at *9 (E.D.N.Y. Dec. 14, 2007).

8

litigation. Although Blare asserts that he wished to participate in the Texas trial by telephone and the judge refused to allow it, even if that assertion were proven, such a decision by the Texas judge (which could have been appealed) is not sufficient to prevent the application of the res judicata doctrine in this case on due process grounds. Given that res judicata prevents plaintiffs in this case from re-litigating the issue of their alleged rightful ownership of the RPUSA marks, their trademark and related claims must fail as a matter of law. In short, as set forth below, because there are no genuine issues of fact as to the application of the doctrine of res judicata to plaintiffs' claims in this case, summary judgment in defendants' favor on all claims is warranted.[11]

---

[11] Furthermore, defendants argue that the related doctrine of collateral estoppel also precludes the plaintiffs from bringing this case. Under Texas law, collateral estoppel "bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action." *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984). "'[T]o invoke the doctrine of collateral estoppel, a party must establish that: (1) the facts sought to be litigated in the second lawsuit were fully and fairly litigated in the first lawsuit; (2) those facts were essential to the judgment in the first lawsuit; and (3) the parties were cast as adversaries in the first lawsuit.'" *Eagle Props. Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990) (quoting *Bonniwell*, 663 S.W.2d at 818). There is case authority that suggests that, under Texas law, collateral estoppel applies to a default judgment only if a defendant filed an answer in the lawsuit. *See In re Johnson*, No. 05-36068, 2007 WL 646376, at *3 (S.D. Tex. Feb. 26, 2007) (collecting cases). A review of the docket sheet from the Texas action indicates that Blare filed an answer to the pleading in that action and that the relief sought in that pleading was ultimately imposed by the Texas court. Moreover, because the Court had conducted hearings prior to the default (in which Blare participated), there was an evidentiary record prior to the default. Blare does not contend he did not answer, but rather contends he appeared in the Texas action, while still disputing the jurisdiction of the court. For all the reasons that res judicata would apply here (as discussed *infra*), collateral estoppel also applies. However, even assuming *arguendo* that no answer was filed, res judicata would continue to apply because, under Texas law, res judicata applies to default judgments regardless of whether an answer was filed.

A. Doctrine of Res Judicata under Texas Law

In the instant case, because the judgment at issue relates to a Texas state court lawsuit, this Court must apply the principles of res judicata under Texas law. *See Matsushita Elec. Indus. Co., v. Esptein*, 516 U.S. 367, 373 (1996) ("Federal courts may not 'employ their own rules . . . in determining the effect of state judgments,' but must 'accept the rules chosen by the State from which the judgment is taken.'" (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982))). The Full Faith and Credit Act, 28 U.S.C. § 1738, requires this Court to give the same effect to the Texas judgment as the Texas courts would. *See* 28 U.S.C. § 1738 ("[J]udicial proceedings of any court of any state . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.").

Under Texas law, res judicata "requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties

or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). Texas follows a transactional approach to res judicata. This means that res judicata precludes not only claims that were raised in an earlier litigation "'but also . . . causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.'" *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex. 1993) (quoting *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex. 1992)). Thus, under Texas law, res judicata prevents re-litigation of "what could have been litigated" in a prior case, not just "what was actually litigated." *See McRae Explor. & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 680 (Tex. App. 1998). Additionally, both under federal law and Texas law, application of res judicata must comply with due process. *See, e.g.*, *Kremer*, 456 U.S. at 481 n.22 (1982); *see also Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 395 (5th Cir. 2001) ("Traditional rules of preclusion as adopted in federal case law – whether under the doctrine of collateral estoppel or res judicata require that the party to be estopped from re-litigating a claim have had a full and fair opportunity to litigate the issue."); *United States v. Texas*, 430 F. Supp. 920, 925 n.6 (S.D. Tex. 1977) ("The principle of res judicata is grounded on the need for judicial finality, for conservation of judicial time and effort, but the principle is circumscribed by the due process requirement that one not be deprived of his day in court.").

B. Application

The Court now turns to each of the requirements for application of res judicata and concludes, as set forth below, that the undisputed facts in the record demonstrate that each element is met.

1. Prior Final Judgment on the Merits

The Texas state court entered a default judgment on August 26, 2008. Under Texas law, a default judgment, whether it occurs pre-answer or post-answer, is a prior final judgment on the merits for purposes of res judicata. *See, e.g.*, *Cadle Co. v Bray*, 264 S.W.3d 205, 214 (Tex. App. 2008) (giving res judicata effect to pre-answer default judgment); *Jones v. First Nat'l Bank of Anson*, 846 S.W.2d 107, 110 (Tex. App. 1992) (default judgment given res judicata effect); *SMS Mktng. and Telecom. Inc. v. HG Telecom, Inc.*, 949 F. Supp. 134, 139-40 (E.D.N.Y. 1996) (applying Texas law and stating that res judicata applies even where first suit was a pre-answer default judgment); *see also Matter of Camp*, 59 F.3d 548, 554 & n.13 (5th Cir. 1995) (noting res judicata effect of default judgment entered as a sanction). Thus, the first element of res judicata is met.

2. Identity of Parties or Those in Privity with Them

"'[T]he identity of parties [element] requires that both parties to the current litigation be parties to the prior litigation or in privity with parties to the prior litigation.'" *United States ex rel. Laird v. Lockheed Martin Eng'g and Sci. Serv. Co.*, 336 F.3d 346, 357 (5th Cir. 2003) (applying Texas law) (second alteration in original) (quoting *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1341 (5th Cir. 1996)), *abrogated on other grounds by Rockwell Int'l v. United States*, 549 U.S. 457, 472 (2007); *see also Getty Oil*, 845 S.W.2d at 800 (stating that "[u]nder Texas law, a former judgment bars a second suit against all who were in 'privity' with the

10

parties to the first suit").

The Supreme Court of Texas has said that "privity" cannot be defined precisely but instead depends on "the circumstances of each case." *Getty Oil*, 845 S.W.2d at 800. However, Texas courts have made clear that privity generally exists in at least three situations: (1) an individual or entity controls an action even if not a party in the action; (2) the individual or entity's interests are represented by another party to an action; or (3) the individual or entity is a successor in interest to a party in the prior action. *Amstadt*, 919 S.W.2d at 653. Conversely, "privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same set of facts." *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971) (finding that privity did not exist between one victim of auto accident and another victim of the accident). Under this standard, it is clear that each party in this case was either a party or in privity with a party in the Texas state court lawsuit.

### a. Plaintiffs Blare and RPUSA

Plaintiffs Blare and the RPUSA in the instant case were both defendants in the Texas suit. Therefore, the identity of parties element is met with respect to them.

### b. Plaintiff MacKay

The undisputed record in this case demonstrates that plaintiff MacKay was in privity with the RPUSA in the Texas litigation. Plaintiff MacKay was, according to plaintiffs, RPUSA chairman from approximately March 2008 to February 2009. (Am. Compl. ¶¶ 4, 54.) Moreover, documents attached to John Blare's opposition in this case show that MacKay, in his role as chairman, played an active role in determining the RPUSA's strategy vis-à-vis the Texas litigation. For example, Exhibit 16(J) to Blare's opposition is the partial minutes of an RPUSA National Committee meeting on March 23, 2008. The minutes indicate that MacKay was present. In "Motion #2" of the meeting, which passed unanimously, the RPUSA National Committee authorized MacKay to pursue the litigation in New York to challenge the Texas state court litigation. In particular, the Committee

> authorize[d] removal and other legal action to be filed in NY as pertaining to actions relating to Texas state court litigation (Dallas TX case #07-09217) and in protection of the RPUSA, its Officers[,] Frank MacKay Chair, and the interests of the RPUSA. The RPUSA National Committee authorizes Frank MacKay to engage an attorney in this matter on behalf of the RPUSA.

(*See* Blare Opp. Ex. 16(J).)[12] Thus, MacKay controlled how the RPUSA—a defendant in the Texas suit—would respond to that suit. MacKay and others on the RPUSA National Committee decided to deal with the Texas litigation by filing suit in New York. Moreover, the National Committee delegated responsibility for filing the New York suit to MacKay. Therefore, because MacKay controlled RPUSA's response to the Texas suit, he was in privity with RPUSA in that litigation. Accordingly, this element is satisfied with respect to MacKay.

### c. Plaintiff Michael Zumbluskas

---

[12] These minutes are also attached to defendants' motion to dismiss as Exhibit 7.

11

The uncontroverted record likewise demonstrates that plaintiff Michael Zumbluskas was in privity with the RPUSA, which was a defendant in the Texas litigation. For example, as with MacKay, Exhibit 16(J) to Blare's opposition demonstrates hat Zumbluskas was a member of the RPUSA National Committee and was present at the March 23, 2008 meeting. Although there is no explicit reference to him voting on "Motion #2," that motion passed unanimously. Moreover, the minutes reflect that Zumbluskas proposed "Motion #3," by which the RPUSA declined to authorize the expenditure of RPUSA funds for the New York action. Further, the minutes of an April 2008 meeting, attached to plaintiff Blare's opposition as Exhibit 16(K), show that Zumbluskas proposed "Motion #10" in which the RPUSA National Committee unanimously rejected "the jurisdiction[,] venue[, and] subject matter of the district Court [sic] in Texas . . . ." Additionally, during the Texas litigation, Zumbluskas was appointed as "Chair of the RPUSA Special Committee on Legal Response." (*See* Blare Opp. Ex. 16(K).) Therefore, Zumbluskas, like MacKay, controlled RPUSA's response to the Texas litigation and was thus in privity with the RPUSA.

d. The Independence Party of New York

Plaintiff the Independence Party of New York ("IPNY") is a "state affiliate" of the RPUSA. (Am. Compl. ¶ 8.) Moreover, the relationship between IPNY and the RPUSA is made clear by the overlap in leadership between the two organizations. (*See* Am. Compl. ¶¶ 9-11.) Thus, the IPNY was in privity with the RPUSA, a defendant in the Texas case.

e. The Defendants

The plaintiffs in the Texas litigation were the Texas Reform Party, the Reform Party of Florida, and the Reform Party of Michigan. The parties in the instant case do not dispute that the Collison Faction defendants in this case controlled these organizations. (*Compare* Def. Mem. of Law at 5 nn.4-6 (stating that defendants Collison, Kennedy, Foster, Johnson, Miller, and Hernandez authorized and/or participated in the Texas litigation) *with* Aff. in Opp. at 4-5 ("The Defendants in [this case] apparently are the officers behind the Texas, Florida, and Michigan Reform Parties.")).[13] Thus, the uncontroverted record demonstrates that the Collison Faction defendants in this case were in privity with the plaintiffs in the Texas case.[14]

---

[13] In his post-oral argument submissions, plaintiff Blare attached an e-mail from defendant Matt Johnson in which Johnson stated that he was not involved with the Texas litigation. (Blare Dec. 9, 2009 submission Ex. 41.) However, Johnson has been a defendant in the instant case from the outset. (*See* MTD Ex. 7 (May 28, 2008 Suffolk County Order to Show Cause).) Plaintiffs named him as a defendant because, they allege, he is a member of the Kennedy Faction. (*See id.*, MacKay affidavit ¶ 4 (defining the Kennedy Faction as "Defendants Kennedy, Foster, Hernandez, Jr., Collision *et al.*) (emphasis added); *see also* Am. Compl. ¶ 37.) They also allege the Kennedy Faction was responsible for the Texas suit. Thus, it is clear that Johnson is named as a defendant in the instant lawsuit based upon his status as a member of the Kennedy Faction which was in privity with plaintiffs in the Texas action.

[14] Defendant Kay Allison Crews was not a party to the Texas litigation; rather, she was appointed by the Texas Court to organize a national RPUSA convention under court supervision to determine the party leadership. However, her inclusion as a defendant here will not prevent the application of

In sum, plaintiffs Blare and the RPUSA were defendants in the Texas litigation. The other plaintiffs in this case were in privity with the defendants in Texas. Similarly, defendants in this case were in privity with the organizations that were plaintiffs in the Texas lawsuit. Accordingly, the identity of the parties element has been met.

### 3. Identity of Claims Between First and Second Suits

Additionally, for res judicata to apply, the second action must be based on the same claims as were raised, or could have been raised, in the first action. Under this standard, a claim that would have been a compulsory counterclaim in the first action is precluded from being brought in a second action. *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001) ("Texas follows the transactional approach to res judicata. This approach mandates that a defendant bring as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit." (internal citations omitted)); *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999) (res judicata bars asserting in a second action claims that would have been compulsory counterclaims in an earlier action); *Jones*, 846 S.W.2d at 109-10 (holding claim that would have been a compulsory counterclaim in prior litigation barred by res judicata); *see also Jack H. Brown & Co. v. N.W. Sign Co., Inc.*, 718 S.W.2d 397, 400 (Tex. App. 1986) ("[A] party has no right to let an adverse claim go by default and reserve his counterclaim for a time and place of his own choice.").

To determine whether a counterclaim is compulsory, Texas courts apply the same "transaction or occurrence" standard as federal courts do.[15] The Supreme Court of Texas has interpreted the Texas counterclaim rule — Tex. R. Civ. P. 97(a) — as requiring the following for a counterclaim to be compulsory:

(1) [the purported counterclaim] is within

---

res judicata against the plaintiffs. *See Lockheed Martin*, 336 F.3d at 357 (stating res judicata is not "defeated by the inclusion of additional parties to the second suit"). To hold otherwise would allow a losing party in one suit to avoid preclusion in a later suit simply by adding additional parties. In any event, as noted *infra*, the claims against defendant Crews must be dismissed on the grounds of quasi-judicial immunity.

[15] *See* Tex. R. Civ. P. 97(a) ("A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction; provided, however, that a judgment based upon a settlement or compromise of a claim of one party to the transaction or occurrence prior to a disposition on the merits shall not operate as a bar to the continuation or assertion of the claims of any other party to the transaction or occurrence unless the latter has consented in writing that said judgment shall operate as a bar."); *see also Fid. Mut. Life Ins. Co. v. Kaminsky*, 820 S.W.2d 878, 881 (Tex. App. 1991) ("Rule 97(a) of the Texas Rules of Civil Procedure is practically identical to Rule 13(a) of the Federal Rules of Civil Procedure."); *Jack H. Brown*, 718 S.W.2d at 399 (explaining that Texas Rule 97(a) is based on Fed. R. Civ. P. 13(a) and using materials interpreting the federal rule to interpret the Texas state rule).

the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the claim is mature and owned by the defendant at the time of filing the answer; (4) it arose out of the same transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require the presence of third parties over whom the court cannot acquire jurisdiction.

*Ingersoll-Rand*, 997 S.W.2d at 207.

Plaintiffs' claims in the instant case were compulsory counterclaims in the Texas litigation. First and foremost, plaintiffs' claims in this case and the claims in the Texas case both concern the subject of who properly controls the RPUSA's property. The events at issue here are the same ones that were at issue in Texas. For example, plaintiffs here claim that the Florida judgment deprives defendants of any rights in the RPUSA marks. (*See* Am. Compl. ¶¶ 56-72.).[16] The Texas court also examined the preclusive effect of the Florida judgment.[17] Similarly, plaintiffs' ability to bring their claims in the instant case depends on their status as the lawful RPUSA leadership. This in turn depends on the validity of the Yuma convention — an event that was also at issue in Texas — because plaintiff Blare was elected to office at that convention and plaintiff MacKay was a successor to an officer elected at that convention. In short, events that were at issue in Texas form the basis for plaintiffs' claims here.

Additionally, it was possible for plaintiffs

---

[16] The documents from the Florida litigation unequivocally demonstrate that the Florida judgment concerned only the validity of the Tampa convention, and nothing more. First, the Florida verdict sheet asks the jury to answer only a single question: "Do you find by the greater weight of the evidence that the vote changing the officers at the June 2005 Tampa convention was valid?" (*See* MTD Ex. 2; Opp. Ex. 2.) It says nothing about the Yuma convention or about broader matters of RPUSA governance. Second, the district court's entry of judgment dismissed plaintiffs' claims "with prejudice with respect to claims" based on authority derived from "*the national convention in Tampa, Florida*" but without prejudice to other claims. (*See* MTD Ex. 3.) (emphasis added). By way of comparison, the judgment in the Texas case was broader in scope. It, *inter alia*, permanently enjoined the defendants in that case from "holding themselves out to any entities . . . as . . . representatives of the Reform Party of the United States of America . . . "; required the defendants to turn over RPUSA property to David Collison; and ordered a constructive trust be imposed on the property. (MTD Ex. 12; Opp. Ex. 1.) Third, the Florida court's "Order Denying Motions for Judgment as a Matter of Law" (Opp. Ex. 3.) contains a thorough discussion of the events leading up to the Tampa convention, but includes nothing even remotely analogous regarding the Yuma convention. Regardless of what may have been the understanding between the parties, the documents from the Florida case reflect that the Tampa convention was the only transaction or occurrence embodied in the Florida court's judgment.

[17] Plaintiffs' opposition in this case implies that the Texas court was unaware of the Florida judgment (*see* Opp. at 4), but a transcript of the February 22, 2008 hearing in Dallas undercuts that assertion. The transcript shows that plaintiff Blare, a defendant in the Texas case, had at least one on-the-record discussion with the Texas judge regarding the Florida case. (*See* Def. Dec. 8, 2009 Filing, Ex. B, Feb. 22, 2008 Transcript 100:16-101:17.)

14

in this case to bring their claims in Texas. The amended complaint here asserts that the Collison Faction defendants have been unlawfully holding themselves out as the RPUSA representatives since at least September 2007, before any responses or answers were filed in the Texas case. Furthermore, the federal trademark claims plaintiffs assert here could have been brought in Texas state court. *See RBCI Holdings, Inc. v. Drinks Am. Holdings, Ltd.*, No. 07 Civ 2877 (DC), 2008 WL 759339, at *2 (S.D.N.Y. Mar. 20, 2008) ("Federal courts have original — but not exclusive — jurisdiction over 'any civil action arising under any act of Congress relating to . . . trademarks.'" (quoting 28 U.S.C. § 1338(a))). While the plaintiffs in Texas were state party organizations, it is not disputed that these organizations were proxies of, and in privity with, the individual Collison Faction defendants.

### 4. Due Process

Plaintiff Blare argues that res judicata should not apply because he was deprived of due process in the Texas litigation. Specifically, Blare argues that he only made a special appearance in Texas, that he was deprived of an opportunity to testify at a February 22, 2008 hearing, that he was denied a continuance at the February 22, 2008 hearing, and that he was not allowed to attend the August 26, 2008 trial by phone.

A federal court cannot give preclusive effect to a state judgment unless the party against whom the state judgment is asserted had a full and fair opportunity to litigate in the state case. *See Kremer*, 456 U.S. at 481 n.22 ("While our previous expressions of the requirement of a full and fair opportunity to litigate have been in the context of collateral estoppel or issue preclusion, it is clear . . . that . . . res judicata or claim preclusion is subject to the same limitation."). This is not, however, a demanding test: "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Id.* "Due process generally requires 'notice and an opportunity to respond.'" *Abbott v. Michigan*, 474 F.3d 324, 331 (6th Cir. 2007) (quoting *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985)).

The undisputed facts in the record from the Texas state court record demonstrate that the Texas court gave Blare adequate notice and opportunity to respond to the claims in that lawsuit. It is undisputed that Blare was aware of the proceedings in Texas. He acknowledges that he twice testified on his own behalf in hearings in the Texas litigation and that, on at least three occasions, he was allowed to cross-examine the Texas plaintiffs' witnesses. (Blare Dec. 9, 2009 Response/Reply ¶ 9.1.) Blare states that he was not allowed to testify at the February 22, 2008 temporary injunction hearing. However, the transcript of that hearing shows that at the outset of the hearing the judge allotted each side 30 minutes "for argument, evidence, and statements." (*See* Def. Dec. 8, 2009 Submission, Ex. B, Feb. 22, 2008 transcript 6:23–25.) The Texas judge clearly stated that cross-examination and objections counted towards each side's 30 minutes. (*Id.* 7:2-5.) The transcript reflects that Blare made numerous objections and cross-examined multiple witnesses. (*See id.* 34:12-47:8; 56:14-59:12; 63:1-63:21; 66:1-67:21; 69:5-69:24; 71:16-71:25.) While Blare was examining witness Shene Hoffpauir, his time expired. (*Id.* 78:11-12.) Read as a whole, the transcript shows that Blare was given ample opportunity to be heard at the February 22

15

hearing. His due process rights are not affected simply because the Court refused to grant him an extension over the allotted 30 minutes.

Blare also argues that he attempted to appear by telephone in connection with the trial but was not permitted to do so. Although there is no such ruling in the record, Blare asserts that he left a message in advance of the trial with the Clerk of the Court that he wished to appear by telephone, and, when he called the courthouse on the day of the trial, he was told by the court administrator that he could not appear by telephone. Blare does not claim that he ever made any written application to appear at the trial by telephone, nor is it clear why he did not appear in person. Assuming *arguendo* for purposes of summary judgment that Blare's version of the facts is accurate, the Texas court was not required to allow Blare to appear by telephone, rather than in person, at the August 26, 2008 trial in order to comply with due process. Due process requires reasonable access to courts but not that a particular means of access be made available. *See generally Aswegan v. Henry*, 981 F.2d 313 (8th Cir. 1992) (stating that right to access courts did not require state to eliminate policy prohibiting prisoners from making toll-free phone calls). Under the circumstances of this case, where the undisputed record reveals that Blare answered the pleading, participated in hearings in the Texas Court, was aware of the trial date and did not appear in person, and failed to appeal the judgment, the "full and fair opportunity to litigate" requirement is clearly satisfied. If plaintiff believed that the judgment of the Texas lower court was legally erroneous, the appropriate manner for plaintiff to challenge that judgment was through direct appeal to the Texas appellate courts (which plaintiffs chose not to do) and not a collateral attack in New York. *See Fidelo v. Mobil Oil Corp.,* No. 89-CV-6419 (CSH), 1990 WL 165758, at *3 (S.D.N.Y. Oct. 19, 1990).

In sum, the undisputed facts demonstrate the following: (1) the Texas judgment was a final judgment on the merits; (2) the Texas lawsuit concerned the same subject matter as this action; (3) with the exception of Kay Allison Crews, the parties in this case were either parties in the Texas case or in privity with parties in the Texas case; and (4) there was a full and fair opportunity for plaintiffs Blare and RPUSA (and the other plaintiffs in privity with Blare) to litigate the Texas case. Although plaintiffs attempt to raise issues of fact by pointing to various aspects of the long history of the litigation between the competing factions, none of those purported factual disputes (even if resolved in plaintiffs' favor) alter the application of the doctrine of res judicata based upon the undisputed facts. Accordingly, the Texas judgment bars plaintiffs from asserting ownership in the RPUSA name and/or logos and, thus, the federal and state claims in the amended complaint — which are all predicated of such ownership — cannot survive summary judgment.[18] Accordingly, defendants are

---

[18] In July 2009, plaintiff Blare and the other plaintiffs filed separate motions to amend the amended complaint. On July 21, 2009, the magistrate judge advised the plaintiffs that the motion to amend needed to be made to the district court and directed plaintiffs to provide defendants with a copy of the proposed second amended complaint. Thereafter, on August 24, 2009, plaintiff Blare and the other plaintiffs jointly submitted a letter to this Court requesting a pre-motion conference in anticipation of moving to amend the complaint. The Court held a pre-motion conference on plaintiffs' proposed motion to amend and defendants' proposed motion to dismiss (i.e., the instant motion) on September 4,

2009. At the conference, this Court advised plaintiffs that, if they wished to amend the complaint, they could cross-move to amend in response to the motion to dismiss. Plaintiffs did not do so, nor did they request to amend the pleadings when the Court converted the motion to summary judgment. On December 15, 2009, after the Court had told the parties several weeks earlier that it intended to issue its decision prior to December 19, 2009 given the convention planned by the Blare Faction for that date, plaintiff Blare submitted a letter to the Court renewing his request to file a second Amended Complaint. With respect to motions to amend under Rule 15(a) of the Federal Rules of Civil Procedure, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). It is well settled that absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. –- the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, the Court believes that this belated attempt to renew a motion to amend is not in good faith, but rather is a strategic attempt to drag this litigation on for as long as possible to prevent defendants from implementing the Texas judgment. In any event, any attempt to add additional allegations/claims (such as "fraud" or violation of constitutional rights) or other defendants who are in privity with the defendants (which appears to be plaintiff's intention) would be futile because res judicata also would bar all such claims which are simply designed to re-package issues or claims that were litigated, or could have been litigated, in Texas. *See, e.g., Day v. Distinctive Personnel, Inc.*, No. 08-CV-3669 (JFB)(AKT), 2009 WL 2843376, at *6 (E.D.N.Y. Sept. 1, 2009) (finding leave to re-plead would be futile where res judicata barred plaintiff's claims). Therefore, in its discretion, the Court denies plaintiff Blare's request to amend the complaint.

entitled to summary judgment on all claims on res judicata grounds.[19]

IV. MOTION TO VACATE

Defendants also moved to vacate the injunction issued in Supreme Court, Suffolk County, before defendants removed this case to this Court.

---

[19] Defendant Crews is also entitled to summary judgment, in the alternative, on the grounds of quasi-judicial immunity. Defendant Crews, a registered parliamentarian, was appointed by the Texas court to oversee a Reform Party convention. (*See* MTD Ex. 11.) If a court-appointed receiver is acting in accordance with a judicial mandate, he or she is immune from suit. *See Bradford Audio Corp. v. Pious*, 392 F.2d 67, 72-73 (2d Cir. 1968); *cf. Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145, 150 (10th Cir. 2009) (stating that "a court-appointed receiver has absolute quasi-judicial immunity if he is faithfully carrying out the appointing judge's orders" and finding that complaint stated a plausible claim that receiver had exceeded authority). Here, the amended complaint alleges no plausible basis to infer defendant Crews exceeded her authority. In responding to the pending motions, plaintiff Blare has said that Ms. Crews improperly acted as a receiver before being bonded. Even assuming plaintiff Blare is correct, defendant Crews was bonded well in advance of the Dallas Convention, and, in any event, Blare's allegations cannot defeat Ms. Crews's quasi-judicial immunity. *See Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) (stating that quasi-judicial immunity applies even where "'exercise of authority is flawed by the commission of grave procedural errors'") (quoting *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)). Accordingly, the claims against Crews also are barred by quasi-judicial immunity.

17

"Upon removal, the orders entered by the state court are treated as though they had been entered by the federal court." *Nasso v. Seagal*, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2003). A district court has discretion to modify a previously entered preliminary injunction. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984). Here, defendants have established plaintiffs' claims do not survive summary judgment. Therefore, because the plaintiffs' claims have no merit, the Court vacates the injunction entered by Supreme Court, Suffolk County. *See, e.g.*, *Whimsicality, Inc. v. Battat*, 27 F. Supp. 2d 456, 464 (S.D.N.Y. 1998) (vacating preliminary injunction where infringement claims were dismissed); *accord Nationsbank Corp. v. Herman*, 174 F.3d 424, 430 (4th Cir. 1999) (granting defendant's summary judgment motion and vacating preliminary injunction).

V. Conclusion

For the foregoing reasons, the Court grants the defendants' motions for summary judgment as to all federal and pendent state claims in the amended complaint. The Court also grants the motion to vacate the injunction previously issued in this case by the state court prior to removal.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: December 16, 2009
Central Islip, New York

\* \* \*

All plaintiffs except John Blare are represented by Douglas J. LeRose, Law Offices of Douglas Lerose, 445 Broad Hollow Road, Suite 200, Melville, NY 11747 and Steven Cohn, Steven Cohn, P.C., 1 Old Country Road, Suite 420, Carle Place, NY 11514. Plaintiff Blare is *pro se*. All defendants with the exception of Beverly Kennedy are represented by R. James De Rose, III, Locke Lord Bissell & Liddell LLP, 3 World Financial Center, New York, NY 10281. Defendant-counter-plaintiff Kennedy is *pro se*.